UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JOYCE A. GLOVER, )
)
      Plaintiff )
  v. ) CAUSE NO. 1:07-CV-167 WCL
)
U.S. HEALTHWORKS a/k/a )
U.S. HEALTHWORKS OF INDIANA, INC. )
)
Defendant. )

## OPINION AND ORDER

After sixty-six year old plaintiff, Joyce Glover's ("Glover's"), position as a Center Manager was eliminated, she brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.,* alleging age discrimination by the Defendant U.S. Healthworks of Indiana, Inc.("Healthworks"). In addition, Glover asserts claims for interference with her health benefits and/or retaliation for obtaining health benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*.

Presently before the Court is Healthworks's Motion for Summary Judgment filed on April 29, 2008. Glover responded on June 19, 2008 to which Healthworks replied on July 21, 2008. For the following reasons, the Motion for Summary Judgment will be GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

1

(1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

**FACTUAL BACKGROUND[1]**

Healthworks hired Glover as a Center Manager in its Ft. Wayne, Indiana medical facility on August 13, 1998. She was 58 years of age at the time. Glover was employed by Healthworks until June 29, 2006. She was 66 years of age at the time her employment with Healthworks ended.

**A.** **General Facts**

Healthworks's Ft. Wayne facility is a medical center providing services such as preferred physicals, physical therapy services, preventive care services, workers' compensation treatment and employment-related physicals to client businesses. As Center Manager, Glover was charged with financial management, personnel management and general oversight of all operations for the Ft. Wayne medical center.

As part of her job duties, Glover managed a staff of nurses, physical therapists, physical therapy assistants, certified Medical Assistants and Medical Assistants. Glover's job duties also included business development, i.e., generating new business and finding new clients. Glover could not, however, provide physical therapy assistant services at the centers she managed because she

---

[1]The Plaintiff agreed in her responsive brief that she agreed with the Statement of Material Facts submitted by the Defendant with only minor exceptions which shall, where relevant and supported by the evidence, be included herein.

had no post-high school education or degree in that area.

In 2003, Healthworks, in an effort to contain costs, began assigning one Center Manager to manage two contiguous centers. As a result of this program, Glover became responsible for managing both the Ft. Wayne and Warsaw clinics. According to Glover, this lead to problems for her because the Fort Wayne center was expanding in revenue, services, client base, and profitability while the Warsaw center had been stagnant and was not growing in revenue or profits. Glover believed some of the medical staff at the Warsaw center should be replaced, but she did not have the authority to take that action.

From 2004 until her position was eliminated in 2006, Glover's immediate supervisor was Mark Foster ("Foster"), a Vice President and Regional Director of the Midwest region of Healthworks. Foster is less than 50 years old. Brian Arnds, ("Arnds") Vice President of Human Resources is also less than 50 years old.

**B.**     **Glover's Performance Evaluations**

In 2003, Glover received a performance review, titled Associate Performance Appraisal ("2003 Appraisal"). The 2003 Appraisal is best classified as mediocre – neither a ringing endorsement or an objectively poor review. Glover's overall performance rating was classified as satisfactory/needs improvement. Comments included in the 2003 Appraisal indicate that Glover had trouble completing her job tasks and she had ongoing personnel management issues. Other comments indicated that due to her involvement managing the Warsaw facility, in addition to managing the Ft. Wayne center, she was unable to effectively and efficiently juggle all of the tasks required of a Center Manager. In addition, as Center Manager for Ft. Wayne, Glover's staff had customer service issues which resulted in the loss of customers.

Glover also struggled in obtaining the respect of her staff due to conflicts between herself

and a member of her staff; she was counseled regarding these issues. Glover was counseled about her attendance and instructed to keep regular office hours during working hours.

In 2004, Glover received another annual performance review ("2004 Appraisal") for the period January 1 to December 31, 2004. Foster conducted her 2004 Appraisal. Glover's 2004 Appraisal, like her 2003 review, indicated that she had difficulty completing tasks on-time and that she needed to improve her organizational and computer skills. Glover received ratings of "need improvement" in the following categories: (1) planning and efficiency; (2) initiative; (3) customer service; (4) dependability; and (5) organization. Her overall performance rating fell within the "satisfactory to needs improvement" range. In the comments section, Foster noted that "the area that is still in need of improvement is the overall management of expenses to reach the budgeted EBITDA goals." (2004 Appraisal, p. 3). Glover disagreed with Foster's assessment of her performance and made notations to that effect on the 2004 Appraisal.

In 2005, Foster again conducted Glover's annual appraisal ("2005 Appraisal"). Unlike her prior performance appraisals, this appraisal demonstrates significant improvements in the areas that had previously been areas of concern in Glover's prior annual appraisals. Glover did not receive a single "needs improvement" rating and, in many of the problem areas from her 2004 Appraisal, she received ratings of "exceptional."

However, in the comments, Foster noted that "the coming year will require more diligent management of financial resources due to the loss of her top client." Glover acknowledges that she lost the top client of the Ft. Wayne center in 2005 and that this client generated between $350,000 and $600,000 in annual revenue. In addition, Glover's 2005 Appraisal indicates a need to improve her performance in three areas: (1) in the area of cash collections; (2) expense and SWB[2] control;

---

[2]SWB is an abbreviation for salaries, wages, and benefits.

and (3) organization/computer skills.

Glover was terminated prior to her 2006 Appraisal. However, in February 1, 2006, Glover received an email from Foster's superior congratulating her on her outstanding center financial performance in the year 2005.

C.      **Healthworks's Reduction in Force**

In 2004, due to a downturn in the economy, Healthworks began suffering serious financial problems which required staff reductions and cost-containment strategies to be employed. Glover was generally aware of these financial concerns.

In 2006, Healthworks, already struggling financially, anticipated losing significant revenue due to a change in California law that would impact the way in which workers' compensation claims were paid. At the time, Healthworks' California operations generated about 75% of the company's revenue. Due to the anticipated decrease in revenue, Healthworks determined it needed to eliminate at least forty-three positions throughout the organization and country. Healthworks's Ft. Wayne, Indiana facility, under Glover's management, suffered nearly $20,000 in losses through the first quarter of 2006.

Foster and Arnds together determined what positions would be eliminated in the Indiana market; the factors they considered were: position held and position's necessity within the company; employee performance, and tenure. (Arnds Aff. ¶ 10).

On June 29, 2006, Glover met with Foster and she was notified that her position at Healthworks was being eliminated due to a system-wide reduction-in-force ("RIF"). As part of its efforts to reduce costs and redundancies, Healthworks determined that one Center Manager could oversee more than one facility in northern Indiana. Healthworks, in turn, selected Kelli Becker ("Becker"), the Elkhart Indiana Center Manager, as the successor candidate to Glover. (Arnds Aff.

¶ 16). Becker was hired in 1992, had more education than Glover and the Elkhart clinic, under Becker's management, had $120,000 in profits through the first quarter 2006.³ In the past, Becker demonstrated a great ability to successfully manage simultaneously more than one facility for US Healthworks. (Arnds Aff. ¶ 17). Becker received outstanding and exceptional ratings in her performance appraisals in 2003, 2004 and 2005; her performance reviews indicate that she was able to meet all deadlines even when charged with simultaneously managing both the Elkhart center and the Muncie, Indiana center. (Arnds Aff. ¶ 17; Arnds Aff. Exs. D, E, F). Becker's 2003 performance review stated she was one of the best managers in the Midwest; her 2004 performance review indicated she was able to help where needed while keeping her clinic functioning at a high level. (Arnds Aff. Ex. D). Unlike Glover, Arnds believed Becker had demonstrated an ability to successfully stretch herself to simultaneously manage two centers, without either center suffering. (Arnds Aff. ¶ 17; Arnds Aff. Exs. D, E, F; Glover Dep. 88).

Healthworks offered Glover a ten week severance package which would have provided her ten weeks of full salary and free health insurance benefits, if she signed a standard severance release agreement. (Glover Dep. 58; Glover Dep. Ex. G). Healthworks gave Glover two months after her final day of work to consider accepting its severance package. During that time, it continued, un-interrupted and free of charge, Glover's same health insurance benefits. Prior to that, Glover paid $28 a pay period for her health insurance benefits while Healthworks paid the rest. (Glover Dep. 63, 75). Glover refused the severance package offer from Healthworks. (Glover Dep. 59).

**D.     Evidence of Age Bias**

---

³Becker is a physical therapy assistant and provides physical therapy to Healthworks clients, which generates additional revenue for her clinic.

Glover testified one of the reasons she believes her age led to her termination is that Becker was younger and absorbed her duties. (Glover Dep. 74:20-23). After Glover turned 65, Foster indicated to Glover that her possible retirement was on his mind. He told Glover that he did not want Glover to "up and retire and leave me without a Center Manager." (Glover Aff. at ¶31). However, no mention of "retirement" was made to Glover on the day Foster notified her of her position's elimination.

When Glover reviewed the notice provided by Healthworks, she concluded that she was one of the oldest employees severed and she was the only one holding the title "Center Manager," although there were two "Area Managers" severed who also acted as Center Managers. The other two area/Center Managers whose positions were eliminated were younger than Glover; one was 55 years old and the other 44. Glover testified that she believes that her age was a factor in Healthworks decision to sever her employment.

**E.      Statistics**

Healthworks conducted a review of the average age of its employees prior to the RIF and the average age of its employees after the RIF. The analysis demonstrates that the average age before the RIF was 38.87 years, and the average age after the RIF was 38.813 years. (Arnds Aff. ¶ 15). Throughout Healthworks's organization, three Center Managers were eliminated, including Glover. The other two Center Managers who were eliminated each oversaw more than one center and held the title of Area Manager. Healthworks provided Glover with the notice required under the Age Discrimination in Employment Act (ADEA) informing her of the positions being eliminated through the RIF and the age of those people selected for the RIF.

**F.      Events Post-RIF**

Glover participated in Healthworks's qualified healthcare plan. Healthworks's Benefits

Administrator Leslie Overby worked with Glover so she could correctly obtain all of the COBRA benefits owed to her. Initially there was some confusion as to the correct qualifying date for Glover's COBRA benefits because Overby presumed Glover had accepted the severance package, which would have delayed the COBRA qualification date. Glover did not correct Overby's presumption even though Glover was aware of it. (Glover Dep. 60). All of Glover's health claims, including those related to her knee replacement surgery, were paid in full and Glover has received reimbursement for all out-of-pocket expenses. (Glover Dep. 64). Glover was able to access and withdraw all monies in her Healthworks 401(k) account; Glover received all of the unemployment to which she was entitled. (Glover Dep. 59; 67). In December 2006, Healthworks responded to Glover's request for assistance in completing a form necessary for her to qualify for federal Medicare benefits; she was able to receive all of her Medicare benefits due to Healthworks's assistance; there were no benefits to which she was denied. (Glover Dep. 69). Healthworks provided a list of open positions to Glover and encouraged her to apply; Glover chose not to apply for any open positions. (Glover Dep. 72).

## DISCUSSION

As noted above, Plaintiff alleges two claims. The first is a claim of age discrimination under the ADEA and the second, is a claim under ERISA for interference with employee benefits. Each of these claims shall be examined below.

**I.     ADEA Claim**

A plaintiff alleging employment discrimination under the ADEA can contest summary judgment by using either the direct or indirect method of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008); *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). The direct method requires the plaintiff to produce enough evidence, either direct or circumstantial,

"that could permit a reasonable jury to conclude that the employer acted with discriminatory intent . . . ." *Brewer*, 479 F.3d at 915; *see also Atanus*, 520 F.3d at 671-72 ("The focus of the direct method of proof . . . is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action."); *Cerutti v. BASF Corp*, 349 F.3d 1055, 1061 (7th Cir. 2003).

Glover contends that although she does not have direct evidence of discrimination in the traditional legal sense, she has constructed a "convincing mosaic" of circumstantial evidence that 'allows a jury to infer intentional discrimination." *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir.2004) (quoting *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir.1994)). The Seventh Circuit has recognized three different types of circumstantial evidence of intentional discrimination. *Hossack v. Floor Covering Assocs. of Joliet, Inc.,* 492 F.3d 853, 862 (7th Cir.2007). The first and most common "consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn...." *Id.* at 862 (quoting *Troupe,* 20 F.3d at 736). The second type is evidence that similarly situated employees outside the protected class received systematically better treatment. *Id.; Troupe,* 20 F.3d at 736. The third is evidence that the plaintiff was qualified for the job in question but passed over in favor of a person outside the protected class and that the employer's stated reason is a pretext for discrimination. *Hossack,* 492 F.3d at 862; *Troupe,* 20 F.3d at 736.

To establish her circumstantial case, Glover points to the fact that her performance in 2005 had improved and she received a congratulatory email from Foster's supervisor to demonstrate that her performance was solid at the time of the RIF. Glover also contends that she was not at fault for the various economic changes at the Fort Wayne office, such as the loss of Fort Wayne

9

Developmental Training Center. Finally she contends that Foster's comment to her that he didn't want her to "retire" somehow suggests discriminatory animus.

The hurdle for Glover, however, is that none of this evidence even when taken together points directly to or even raises an inference of a discriminatory reason for the employer's action. For instance, Foster's comment, even assuming he, in fact made such a comment, does not indicate the presence of discriminatory animus in the decision to eliminate Glover as part of the RIF. In fact, Glover does not allege that any discriminatory statements were made at or around the time of the RIF. Similarly, while Glover points to her improving performance, there is nothing about that fact alone or in combination with the others that lends credence to the theory that she was chosen for the RIF because of her age. Accordingly, Glover has not demonstrated any direct evidence of age discrimination.

This leaves Glover with the burden of demonstrating her age discrimination claim via the indirect method. The indirect method is the well-known *McDonnell Douglas* burden-shifting framework, as modified in the context of a mini-reduction-in-force ("mini-RIF"), that is where the plaintiff's duties were absorbed by other employees. *See, e.g.*, *Petts v. Rocklege Furniture LLC,* __ F.3d __, 2008 WL 2791674, at *8 (7th Cir. July 21, 2008); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007). Here, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In order to establish a prima facie case of discrimination under Title VII or the ADEA in a mini-RIF situation, the plaintiff must show that 1) she belongs to a protected class, 2) she performed her job according to her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) "her job duties were absorbed by employees who were not members of her protected class." *Hemsworth*, 476 F.3d at 492. If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the defendant to

provide a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has done so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

Of the four elements of the prima facie case, only one is really in dispute. Clearly, Glover is a member of a protected class since she was 66 years old at the time of her termination and there is no question but that she suffered an adverse employment action when she was terminated as part of the RIF. Further, Healthworks seemingly admits that Glover's duties were absorbed by a younger individual outside the protected class, i.e. Becker. *See Merillat v. Metal Spinners, Inc.,* 470 F.3d 685, 690 n. 1 (7th Cir.2006) ("[t]he retention of an employee outside the protected class to perform the plaintiff's duties is nothing more than a demonstration of more favorable treatment, particularly tailored to the factual circumstances of a mini-RIF case.")

As for the remaining factor, whether Glover was performing her job according to her employer's legitimate expectations, Healthworks contends she was not and points to her performance appraisals as documentation of her specific performance deficiencies. In response, however, Glover points out that she did receive an improved performance appraisal in 2005 and she received the email from Foster's superior indicating that her center was profitable. This, she contends, is evidence that she was, in fact, meeting her employer's expectations at the time of the RIF.

Even if the court assumes that Glover was, in fact, performing her job satisfactorily at the time of the RIF, Healthworks has set forth a legitimate non-discriminatory reason for Glover's termination. Indeed, due to a downturn in financial conditions Healthworks was forced to eliminate jobs, 43 of them in the end. Given this legitimate non-discriminatory, the burden returns

to Glover to show that Healthworks decision to terminate her was pretextual, i.e., not legitimately related to the RIF but because of her age.

The focus for a pretext inquiry is "whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir.2006) (quoting *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir.2000)); *see also Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 417 (7th Cir.2006) ("[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground."). Simply put, pretext is "a deliberate falsehood." *Forrester,* 453 F.3d at 419.

"Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 983 (7th Cir.1999) (citation omitted); *see also Forrester,* 453 F.3d at 417-18; *Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 548 (7th Cir.2002). Ultimately, the plaintiff proceeding indirectly must also "provide evidence of at least an inference that the real reason for their dismissal was discriminatory." *Jackson,* 176 F.3d at 983; *see also Brown v. Ill. Dept. of Natural Res.,* 499 F.3d 675, 683 (7th Cir.2007).[4]

---

[4] However, "at summary judgment the plaintiff is not required to establish pretext *and* provide evidence of a discriminatory motive by the defendant.... This level of proof is only required when a plaintiff's case is submitted to a finder of fact." *Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 726 (7th Cir.2005). Rather, in order to survive a motion for summary judgment, the plaintiff "need only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for [his] dismissal." *Id.* (quotation marks and citation omitted); *see also Forrester,* 453 F.3d at 417; *Alexander v. Wis. Dept. of Health & Family Servs.,* 263 F.3d 673, 682-83 (7th Cir.2001); *Jackson,* 176 F.3d at 984.

The undisputed evidence in this case does not lend itself to the conclusion that Glover's termination was for any reason other than the RIF. Certainly, Glover believes that she was more qualified or, at the very least, equally as qualified as Becker so as to escape the RIF. However, "even if an employee would not have been fired under normal circumstances, '[i]n a reduction in force, someone has to go. It is usually the least qualified or least productive employee.' *Merillat*, 470 F.3d at 693 (quoting *Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 573 (7th Cir.1998). The undisputed evidence is that Becker did, in fact, have a higher education level than Glover, she received positive performance evaluations, and she had been working for Healthworks since 1992, or nearly 14 years. Even though, as noted above, Glover's performance may have been satisfactory, it does not mean that her termination as part of a RIF was discriminatory. See *Balderston*, 328 F.3d at 324 (holding that the plaintiff did not demonstrate pretext when there was no evidence to show that the employer "did not honestly believe [it] was dismissing a poorer performing, less suitable" employee in a RIF).

Moreover, this court is not in a position to second-guess employer's decision-making. *See Holmes v. Potter,* 384 F.3d 356, 361-62 (7th Cir.2004) ("[W]e do not sit as a super-personnel department that reexamines an entity's business decision and reviews the propriety of that decision."). On the whole, the most Glover has done in this case is challenge the judgment of Foster and Arnds and this is simply not sufficient to meet her burden at this stage of the case. *See Burks v. Wis. Dep't of Transp.,* 464 F.3d 744, 754 n. 8 (7th Cir.2006) (noting that plaintiff fails to raise a genuine issue of fact merely by challenging the judgment of supervisors); *Ost v. W. Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 441 (7th Cir.1996) ("[A] plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her

employer's proffered reasons for its employment actions."). Accordingly, the court concludes that Glover has not demonstrated a genuine issue of material fact so as set forth a claim of age discrimination. The Defendant's Motion for Summary Judgment on this claim is therefore GRANTED.

## II. ERISA Claims

Finally, Glover argues that Healthworks fired her in violation of § 510 of ERISA to avoid paying medical benefits or to interfere with her attainment of medical benefits. Under that section, an employer cannot discharge " 'a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan.' " *Dewitt v. Proctor Hosp.,* 517 F.3d 944, 949 (7th Cir.2008) (quoting 29 U.S.C. § 1140). To create a triable issue under § 510 using the indirect method of proof,[5] Glover has to show sufficient evidence that she (1) belonged to the protected class of participant or beneficiary, (2) was qualified for her position, and (3) was fired under circumstances that support her contention that Healthworks intended to deprive her of benefits. *See Kampmier v. Emeritus Corp.,* 472 F.3d 930, 943 (7th Cir.2007); *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 796 (7th Cir.2005).

In the end, though, "an ERISA retaliation plaintiff must demonstrate that the employer had the *specific intent* to violate the statute and to interfere with an employee's ERISA rights." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.,* 277 F.3d 882, 892 (7th Cir.2001) (emphasis in original).

Glover does not present much of an argument in favor of this claim and, to the extent she

---

[5]Glover does not assert any direct evidence of an ERISA violation and does not make any argument that there is sufficient circumstantial evidence to permit a jury to directly infer discriminatory motivation on the part of Healthworks.

14

relies on the same evidence for this claim as she did for her age discrimination claim, that evidence is clearly insufficient to bring this claim before a jury. Indeed, while Glover argues that Healthworks somehow chose to terminate her in the RIF to avoid paying for an upcoming knee surgery, this is without any foundation since she admits that Healthworks health benefits did, in fact, pay for the surgery even though she was terminated in the RIF. Further, there is nothing in the record that indicates there was any specific intent on the part of any decisionmaker to deny her any benefit to which she was entitled. Accordingly, the Defendant's Motion for Summary Judgment as to the ERISA claims is GRANTED.

## CONCLUSION

The Defendant's Motion for Summary Judgment is GRANTED in its entirety. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

Entered: This 11th day of September, 2008

s/ William C. Lee
United States District Court